IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16-CR-159  AGF |
| | ) |
| LOREN COPP | ) |
| | ) |
| Defendant. | ) |

**MOTION TO SUPPRESS STATEMENTS & EVIDENCE**

Loren Copp, through counsel Assistant Federal Public Defender Charles J. Banks, respectfully requests that this Court suppress all evidence seized by law enforcement officers and all statements allegedly made by the defendant to law enforcement officials. In support, Mr. Copp states the following:

**I.FACTS**

1. **Search 1**: On October 13, 2015 local law enforcement agents infiltrated the property at 4601 Morganford in St. Louis, Missouri ("The Dojo Pizza Restaurant") under the pretense of conducting a Children's Division wellness check. The agents were dressed in plain clothes and did not identify themselves as police officers. They confronted Mr. Copp, and began interrogating him by asking him questions calculated to elicit an incriminating response. Before doing so, the agents failed to notify Mr. Copp of his right to remain silent or his rights to counsel. Instead, they implied or threatened that if Mr. Copp did *not* talk to them, the agents would remove the minors – whom Mr. Copp regarded as children in his care and custody– from the property and his custody. The

1

agents further searched the Dojo Pizza Restaurant, including non-public portions of the restaurant, and portions of Mr. Copp's separate private residence located at 4310 Neosho Street. The local police then contacted federal agents who became involved in all subsequent stages of the investigation.

    a. Mr. Copp had a reasonable expectation of privacy in the non-public portions of the Dojo Pizza Restaurant and in all portions of the separate residence at 4310 Neosho.

    b. The police searched both properties without Mr. Copp's voluntary consent, without a warrant, and without the presence of exigent circumstances or any other exception to the warrant requirement.

    c. Statements taken from Mr. Copp during this search were inherently coercive under such circumstances. Mr. Copp was not free to leave and any such statements were custodial, elicited through interrogation, and Mr. Copp did not make a knowing and valid waiver of his rights to remain silent or right to counsel.

    d. At no time did the police notify Mr. Copp of his rights as required by *Miranda v. Arizona,* 86 S.Ct. 1602 (1966).

2. **Search 2:** During Search 1, while Mr. Copp was detained in the dining room area, the law enforcement agents accessed several computers located in the Dojo Pizza Restaurant and the residence at 4310 Neosho. The agents turned on the computers and searched their contents. Mr. Copp had a reasonable expectation of privacy in these computers, and the agents searched them without Mr. Copp's knowledge or consent, without a warrant, and without exigent circumstances or any other exception to the warrant requirement.

3. **Search 3:** On October 15, 2016 both local and federal law enforcement agents raided the Dojo Pizza Restaurant. They forced Mr. Copp to sit in the dining area while they removed all of the minors from the property. The agents then proceeded to search the entire Dojo Pizza Restaurant and the private residence at 4310 Neosho. This search exceeded the scope of any authority permitting their presence on the premises. The agents interrogated Mr. Copp while the forced him to sit in the dining room. Then, they arrested Mr. Copp and booked him at the St. Louis City Jail, South Patrol Division.

    a. Mr. Copp had a reasonable expectation of privacy in the non-public portions of the Dojo Pizza Restaurant and in all portions of the separate residence at 4310 Neosho.

    b. The police searched both properties without Mr. Copp's voluntary consent, without a warrant, and without the presence of exigent circumstances or any other exception to the warrant requirement.

    c. Mr. Copp was not free to leave and any such statements were custodial, elicited through interrogation, and Mr. Copp did not make a knowing and valid waiver of his rights to remain silent or right to counsel.

    d. At no time did the police notify Mr. Copp of his rights as required by *Miranda v. Arizona,* 86 S.Ct. 1602 (1966).

4. **Search 4:** Later that same day, while Mr. Copp was in jail, law enforcement agents accessed several computers located in the Dojo Pizza Restaurant and 4310 Neosho. The agents turned on the computers and searched their contents. Mr. Copp had a reasonable expectation of privacy in these computers, and the agents searched them without Mr.

Copp's knowledge or consent, without a warrant, and without exigent circumstances or any other exception to the warrant requirement.

   a. Law enforcement agents subsequently applied for an arrest warrant for Mr. Copp, but the warrant officer declined to issue a warrant. The police released Mr. Copp, after he spent many hours in custody.

5. **Search 5:** On or about the early morning hours of October 22, 2015 witnesses saw law enforcement agents enter the residence at 4310 Neosho and the Dojo Pizza Restaurant. At the time, the properties were vacant, but Mr. Copp retained a reasonable expectation of privacy in both properties. It appears the agents searched both properties, and they did so without Mr. Copp's knowledge or consent, without a warrant, and without exigent circumstances or any other exception to the warrant requirement.

6. Based upon information from the above-named searches, interrogations, and the statements of a confidential source (CS), the police applied for a state level search warrant. Judge Paula Bryant of the St. Louis City Circuit Court relied upon this information, and she issued a search warrant authorizing the search of the Dojo Pizza Restaurant.

   a. The officer procuring the search warrant neglected to inform Judge Paula Bryant of the CS's identity, her reliability, or her criminal history when applying for the search warrant. The officer also misstated the CS's averments in an attempt to bolster the affidavit.

   b. The officer procuring the search warrant also declined to inform Judge Bryant of Search 2, Search 4, and Search 5 described above, which were curiously omitted from any report drafted by the officer.

4

    c. The officer furthermore neglected to notify Judge Bryant that he intended to search the private residence at 4310 Neosho.

        i. Consequently, the subsequent search warrant only authorized a search of the Dojo Pizza Restaurant located at 4601 Morganford, described very specifically as the, " . . .old church, primarily made of brick construction. The 3 front doors are located on the east side of the building and are primarily made of glass. *The address is clearly marked 4601 above the center door.*"

        ii. The residence at 4310 Neosho is a separate, connected building with a separate address and separate entrance on the western side of the property.

    d. Additionally, the officer procuring the search warrant did not disclose that this was a federal investigation conducted for purposes of procuring a federal indictment and with the aid of federal agents.

    e. This search warrant application was therefore submitted with a reckless disregard for the truth, and further inquiry on these matters is requested at the hearing, pursuant to *Franks v. Delaware,* 438 U.S. 155 (1978).

    f. Finally, there is no indication that a federal magistrate judge was unavailable to issue the search warrant, and even though the search was federal in character, the search warrant itself does not otherwise comply with Federal Rule of Criminal Procedure 41.

7. **Search 6:** On October 23, 2015 local police, FBI agents, and Federal Homeland Security agents raided the Dojo Pizza Restaurant and Mr. Copp's residence at 4310 Neosho, under color of Judge Bryant's search warrant.

    a. The raid exceeded the scope of the warrant because agents searched and seized items that were not listed in the search warrant, that exceeded the scope of their investigation, and that were seized from a personal residence not listed on the search warrant.

    b. Authority to search the separate residence at 4310 Neosho could not – in good faith – be reasonably inferred from the warrant or its application affidavit.

    c. Accordingly, the search was conducted without consent, without a lawful warrant, and in any event, the search exceeded the scope of the invalid warrant regarding places to be searched and items seized.

    d. Mr. Copp had a reasonable expectation of privacy in the areas searched and the items seized by the agents.

8. On November 10, 2015 federal agents procured a federal search warrant from United States Magistrate Judge John M. Bodenhausen, authorizing a search of the Dojo Pizza Restaurant.

    a. The affidavit in support of the search warrant consisted of information repeated from the state level search warrant and items seized during Search 6. Therefore, it contained the same errors and defects as described in paragraphs 6 and 7 above, incorporated as if fully set forth herein. Consequently, the warrant and any items seized pursuant to its execution constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

9. **Search 7:** On November 10, 2015 federal agents raided the Dojo Pizza Restaurant and Mr. Copp's residence at 4310 Neosho, under color of Judge Bodenhausen's federal search warrant. The agents took photographs and video from inside the premises. This

search was conducted pursuant to an invalid warrant, without Mr. Copp's consent, and Mr. Copp had a reasonable expectation of privacy in all of the areas searched.

10. Two days later, on November 12, 2015, federal agents procured another federal search warrant from United States Magistrate Judge John M. Bodenhausen, authorizing a search of the Dojo Pizza Restaurant.

    a. The affidavit in support of the search warrant consisted of information repeated from the state level search warrant and items seized during Search 6. Therefore, it contained the same errors and defects as described in paragraphs 6 and 7 above, incorporated as if fully set forth herein. The warrant, and any items seized pursuant to its execution, constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

11. **Search 8:** Later that day, on November 12, 2015, federal agents again raided the Dojo Pizza Restaurant and Mr. Copp's residence at 4310 Neosho, under color of Judge Bodenhausen's federal search warrant.

    a. The raid exceeded the scope of the warrant because agents searched and seized items that were not listed in the search warrant, and such items exceeded the scope of their investigation.

    b. Additionally they seized items from Mr. Copp's personal residence not listed on the search warrant. Authority to search this separate residence could not – in good faith – have been reasonably inferred from the warrant or its application affidavit.

    c. Accordingly, the search was conducted without consent, without a lawful warrant, and in any event, the search exceeded the scope of the warrant regarding places to be searched and items seized. Consequently, the warrant and any items seized

7

pursuant to its execution constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

    d. Mr. Copp had a reasonable expectation of privacy in the areas searched and items seized in Search 8.

12. On December 1, 2015, federal agents procured a federal search warrant from United States Magistrate Judge Shirley Padmore Mensah, authorizing the agents to copy hard drives from the devices previously seized from the Dojo Pizza Restaurant and the residence at 4310 Neosho. The warrant furthermore authorized the federal agents to conduct a forensic analysis on these copied devices.

    a. The affidavit in support of the search warrant consisted of information repeated from the state level search warrant and items seized during Search 6 and 8. Therefore, it contained the same errors and defects as described in paragraphs 6 and 7 above, incorporated as if fully set forth herein.

    b. Consequently, the warrant and information gained pursuant to its execution constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

    c. Mr. Copp had a reasonable expectation of privacy in the items subject to this warrant.

    d. The agents analyzed 7 of the seized computers and found the computers contained no illegal or relevant material.

13. **Search 9:** On March 2 and 17, 2016 federal agents conducted forensic analyses of a Purex external harddrive seized during Search 6. The agents conducted these forensic analyses pursuant to the federal warrant issued by Judge Mensah.

    a. The affidavit in support of the search warrant consisted of information repeated from the state level search warrant and items seized during Search 6 and 8. Therefore, it contained the same errors and defects as described in paragraphs 6 and 7 above, incorporated as if fully set forth herein.

    b. Consequently, the warrant and the seized hard drive constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

    c. Mr. Copp had a reasonable expectation of privacy in the Purex external harddrive, and he did not consent to this search.

14. On, March 7, 2016 federal agents procured a federal search warrant from United States Magistrate Judge Nannette A. Baker, authorizing the agents to analyze the hard drives previously seized from the Dojo Pizza Restaurant and the residence at 4310 Neosho.

    a. The affidavit in support of the search warrant consisted of information repeated from the state level search warrant and items seized during Searches 6 and 8. Therefore, it contained the same errors and defects as described in paragraphs 6 and 7 above, incorporated as if fully set forth herein.

    b. Consequently, the warrant and any information gained pursuant to its execution constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

    c. Mr. Copp had a reasonable expectation of privacy in the items subject to this warrant.

15. **Search 10:** On March 7, 8, and 9, 2016, federal agents conducted several forensic analyses of a Dell Optiplex desktop computer that was seized during Search 6. The

9

agents conducted this forensic analysis pursuant to the federal warrant issued by Judge Baker.

   a. The affidavit in support of the search warrant consisted of information repeated from the state level search warrant and items seized during Search 6 and 8. Therefore, it contained the same errors and defects as described in paragraphs 6 and 7 above, incorporated as if fully set forth herein.

   b. Consequently, the warrant and the seized hard drive constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

   c. Mr. Copp had a reasonable expectation of privacy in the Optiplex desktop computer, and did not consent to this search.

16. On March 24, 2016, federal agents procured a search warrant authorizing the forensic analysis of several electronic devices seized during Search 8. United States Magistrate Judge Noelle c. Collins issued this search warrant.

   a. The affidavit in support of the search warrant consisted of information repeated from the state level search warrant and items seized during Searches 6 and 8. Therefore, it contained the same errors and defects as described in paragraphs 6 and 7 above, incorporated as if fully set forth herein.

   b. Consequently, the warrant and any information gained pursuant to its execution constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

   c. Mr. Copp had a reasonable expectation of privacy in the items referenced in this warrant.

17. On May 10, 2016 federal agents procured a federal search warrant to take photographs of Mr. Copp's naked body, hands, feet and genitals. The warrant was issued by United States Magistrate Judge David Noce.

    a. The affidavit in support of the search warrant consisted of information repeated from the state level search warrant and items seized during Searches 6 and 8. Therefore, it contained the same errors and defects as described in paragraphs 6 and 7 above, incorporated as if fully set forth herein.

    b. Consequently, the warrant and anything seized pursuant to its execution constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

    c. Mr. Copp had a reasonable expectation of privacy in his own body parts, and indeed he objected to this warrant and subsequent search through formal litigation before this Court.

18. **Search 11:** On May 24, 2016 federal agents –pursuant to Judge Noce's search warrant - forced Mr. Copp to strip to his underwear. A government agent then took photographs of virtually every part of Mr. Copp's naked body except his genitals.

    a. Mr. Copp objected to this search through formal litigation before this honorable Court, and he hereby incorporates all arguments from his previously filed *Motion to Quash the Search Warrant, or In the Alternative, for Suppression of Photographs Taken During the Search Warrant's Execution* (Document #24) as if fully set forth herein.

19. On May 20, 2016 – federal agents procured a search warrant issued by United States Judge Shirley Padmore Mensah authorizing agents to conduct forensic analyses on a cellular phone seized during Search 6.

    a. The affidavit in support of the search warrant consisted of information repeated from the state level search warrant and items seized during Searches 6 and 8. Therefore, it contained the same errors and defects as described in paragraphs 6 and 7 above, incorporated as if fully set forth herein.

    b. Consequently, the warrant and any information gained pursuant to its execution constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

    c. Mr. Copp had a reasonable expectation of privacy in his this cellular phone, and he did not consent to its search.

20. **Search 12:** On June 2, 2016 the agents conducted a forensic analysis of this phone.

    a. The affidavit in support of the search warrant consisted of information repeated from the state level search warrant and items seized during Search 6 and 8. Therefore, it contained the same errors and defects as described in paragraphs 6 and 7 above, incorporated as if fully set forth herein.

    b. Consequently, the warrant and the seized hard drive constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

    c. Mr. Copp had a reasonable expectation of privacy in the phone, and did not consent to this search.

    d. No illegal or relevant material was found on the phone.

21. **Search 13:** On July 21, 2016 federal agents transferred all of the seized electronics devices- or copies of same - to the St. Louis County Regional Computer Crime Education and Enforcement Group (RCCEEG) for additional forensic analysis. From

July 2016 through November 2016, the law enforcement agents at RCCEEG searched the devices using various computer forensic programs and analyses.

    a. To the extent that the agents believed this search was authorized by valid search warrant, the affidavit in support of the warrant consisted of information repeated from the state level search warrant and items seized during Search 6 and 8. Therefore, it contained the same errors and defects as described in paragraphs 6 and 7 above, incorporated as if fully set forth herein.

    b. Consequently, the warrant and the seized items and subsequent searches constitute "fruit from the poisonous tree" *Wong Sun v. United States,* 371 U.S. 471 (1963).

    c. Mr. Copp had a reasonable expectation of privacy in these items, and he did not consent to this search.

## II. Legal Argument

1. Because of the type and quantity of personal data citizens store on portable computers and cell phones, these devices are now protected from unreasonable searches and seizures under the 4th Amendment. *David Riley v. California*, 134, S.Ct. 2473, 2490 (2014). A cell phone's owner has a reasonable expectation of privacy in such a device. *Id.*

    a. Therefore, because Mr. Copp had a reasonable expectation of privacy in the computers and devices involved, each time the agents searched the computers without consent or a warrant, they conducted a search in violation of Mr. Copp's rights under the 4th Amendment to the United States Constitution.

2. The searches of the Dojo Pizza Restaurant and the residence at 4310 Neosho were based upon invalid search warrants and exceeded the scope of the warrants.

a. The police who first applied for a search warrant failed to inform the issuing judge about the CS's credibility, criminal history, or even give an accurate portrayal of her statements. This has been held to invalidate a search warrant under similar circumstances. *Id.g. United States v. Hall*, 113 F.3d 157, 160 (9th Cir. 1997), *but see United States v. Campbell*, 12 Fed. Appz. 462 (9th Cir. Ct. App. 2001)(Unpublished Opinion). Absent the CS's assertions, the affidavit in the first search warrant could not support probable cause to issue a warrant.

b. Additionally, the police failed to disclose several searches they had conducted without any authority (*see* Search 2, 4, and 5) in reckless disregard for the truth. Further inquiry is therefore necessary under *Franks v. Delaware*, 438 U.S. 155 (1978) and requested at the hearing on this motion.

c. Furthermore, the search warrant did not comport with Federal Rule of Criminal Procedure 41, despite the fact that the search was "federal in character" under the analysis set forth in *United States v. Bookout,* 810 F.2d 965, 966 (10th Cir. 1987). The search was made "federal in character" when its goal became a federal prosecution. Nevertheless, the application, warrant, and return failed to comply with Federal Rule of Criminal Procedure 41.

d. Finally, the search of the Dojo Pizza Restaurant and the residence at 4310 Neosho exceeded the scope of the warrant itself.

   i. To search every area of both buildings proved excessive and failed to limit the search to those areas that provided a "normal inference as to where the article sought would be located." *See United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003).

    ii. More importantly, when the police searched the residence at 4310 Neosho, they entered into a known, separate building – a private residence – that the warrant did not authorize. No reasonable person could have– in good faith –relied upon the description of the warrant and its affidavit in searching this separate building. *See United States v. Leon,* 468 U.S. 897, 923 (1984). In fact, the officer who procured the initial search warrant <u>knew</u> that this was a separate building, but failed to clarify that in the search warrant affidavit. This suggests the absence of good-faith, and possibly reckless disregard for the truth.

    iii. Therefore, the search of 4310 Neosho violated Mr. Copp's rights under the 4th Amendment to the United States Constitution and its particularity requirement. *See United States v. Gitcho*, 601 F.2d 369, (8th Cir. 1979) and *United States v. Thomas,* 263 F.3d 805 (2001).

3. The entire subsequent investigation relied upon and incorporated the information and seized items from the first search warrant and initial illegal searches by local law enforcement. They therefore constitute "fruit of the poisonous tree under *Wong Sun v. United States,* 371 U.S. 471 (1963).

4. Consequently, if any of the above-named evidence is admitted at trial, it will violate Mr. Copp's rights to due process, equal protection of the law, freedom from unreasonable search and seizure, freedom from self- incrimination, right to counsel, and right to confrontation as guaranteed by the 4th, 5th, and 6th Amendments to the United States Constitution.

WHEREFORE Mr. Copp respectfully requests this Court's order suppressing all of the aforementioned evidence and excluding same from use at trial, and for an evidentiary hearing on this motion. Mr. Copp

further requests leave to supplement this motion with additional testimony, evidence, and exhibits before and during the hearing on this motion.

Respectfully submitted,

/s/Charles J. Banks
CHARLES J. BANKS
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Charles_Banks@fd.org

ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Jennifer Winfield, Assistant United States Attorney.

/s/Charles J. Banks
CHARLES J. BANKS
Assistant Federal Public Defender