UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. S1-4:16 CR 00159 AGF |
| LOREN ALLEN COPP, | ) | |
| a/k/a "Sensei," | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S POST HEARING BRIEF**

Comes now the United States of America, by and through its attorneys, Carrie Costantin,

Acting United States Attorney for the Eastern District of Missouri, and Jennifer A. Winfield,

Assistant United States Attorney for said district, and files its Response to Defendant's Post

Hearing Brief. In support, the government states the follows:

**INTRODUCTION**

The seizure of physical items of evidence from 4601 Morganford Rd. by law enforcement

in October and November 2015 was lawful and there should be no suppression of evidence.  At

the evidentiary hearing in this matter, which was held on June 15, 2017, the government

presented evidence that showed that law enforcement obtained valid search warrants, which

provided probable cause to search 4601 Morganford Rd., and the description of the address

included in those search warrants properly designated the entire 4601 Morganford premises

included in the search.  At the hearing, it was also established that there is no legitimate evidence

of the alleged existence of a separate 4310 Neosho address within the 4601 Morganford

property.  Thus, as probable cause was provided in each and every search warrant obtained in

this matter, the seizure and subsequent analysis of physical items from the 4601 Morganford

property was reasonable, lawful, executed in good-faith, and therefore the evidence should not be suppressed.  In addition, statements provided by the defendant were not obtained in violation of any constitutional rights, as the defendant was not in custody at the time he made the statements. Lastly, disclosure of the confidential source in this matter is not material to the determination of the case and therefore the motion for disclosure of the confidential source should be denied.

## EVIDENTIARY HEARING TESTIMONY SUMMARY

Testimony at the hearing revealed that in September 2015, detectives with the St. Louis Metropolitan Police Department (hereinafter "SLMPD") received a tip from a Confidential Source (hereinafter "CS") who provided information that a subject using the moniker "Sensei," (later identified as defendant Loren COPP), resided at 4601 Morganford Rd., St. Louis, Missouri 63116.  (TR., Supp Hrg at 12-13).  The CS reported that Loren COPP (hereinafter "COPP") operated a business at the Morganford address which included a martial arts dojo, a pizza restaurant operating under the name "Dojo Pizza," a school, and a youth shelter.  The CS also stated that there were several minor females living at Dojo Pizza who were not the biological children of COPP, and they were living with COPP due to their parents being either incarcerated or homeless. In addition, COPP was the only adult living at the facility and had sole care, custody and control of the minors. (TR., Supp Hrg at 13 and Govt. Exh. 1).

Testimony at the hearing referred to the state search warrant affidavit, which also revealed that the CS also advised that COPP was forcing the minors to work at "Dojo Pizza," located in the front of portion of Dojo Pizza, without providing compensation or consistent food to the minors.  (TR., Supp Hrg at 13 and Govt. Exh. 1).   As found in the affidavit, the CS advised that when the minors refused to work, COPP would verbally punish them, which would include threats of being put out of Dojo Pizza, which would leave the minors homeless.  (Govt.

Exh. 1). The CS also advised that COPP inappropriately touched the minors, and the minors did

not receive medical treatment, as they had untreated bed bugs and lice, as well as sprained

appendages.  (Govt. Exh. 1).

There was further testimony that on October 9, 2015, an investigator with the Missouri

Children's Division ("MCD") contacted SLMPD Detective Keaton Strong regarding a Hotline

complaint received regarding allegations of abuse by COPP.   (TR., Supp Hrg at 13).  The MCD

investigator also reported that "Jane Doe 5" made an initial complaint against COPP as well, but

a follow-up interview with the minor would be needed.  (TR., Supp Hrg at 13-14).  Then on

October 13, 2015, Det. Strong and the MCD investigator responded to 4601 Morganford based

on the hotline complaint. (TR., Supp Hrg at 16-17).  Det. Strong accompanied the MCD

investigator due to concern for her safety because the hotline complaint contained information

that COPP was a karate instructor with firearms at the facility, and the Morganford property was

very large. (TR., Supp Hrg at 15).

Testimony at the hearing revealed that Det. Strong conducted an investigation of the 4601

Morganford property which consisted of a computer work-up, Google Maps search and checking

with the Assessor's office.  (TR., Supp Hrg at 16).  Det. Strong also testified that during the

October 13, 2015, visit to the 4601 Morganford property, COPP was advised by the MCD

investigator as to why she and Det. Strong were present.  (TR., Supp Hrg at 19-20).  The MCD

investigator provided Copp with his Children's Division's rights.  (TR., Supp Hrg at 20-21).

Copp was not considered to be under arrest, he was not handcuffed, Det. Strong did not pull out

his weapon at any time, Copp was free to ask Det. Strong and the MCD investigator to leave,

Copp was not verbally or physically threatened by them and Copp voluntarily spoke with the MCD

investigator and was not placed under arrest after the interview.  (TR., Supp Hrg at 22-23, 25).

The MCD investigator then informed Copp about the Hotline complaint and COPP chose to make statements.  (TR., Supp Hrg at 23-24).

Following, Copp voluntarily escorted the MCD investigator and Det. Strong within the 4601 Morganford property.  (TR., Supp Hrg at 25).  Also, as Copp, Det. Strong and the MCD investigator were moving within the Morganford property, (1) they freely moved between the interior floors, (2) they did not have to exit the building in order to get to the where the girls were sleeping and bathing, (3) they did not have to unlock any doors to get to residential portion of the property and (4) it appeared to Det. Strong that the occupants used the entire property as though it were a single address.  (TR., Supp Hrg at 26).  Det. Strong also testified that they did not enter into Copp's living area, nor did he access any of Copp's computers or seize any of his property.  (TR., Supp Hrg at 27, 30).  After arriving to the residential portion of the property, the MCD investigator interviewed the minor females who were present regarding information provided in the Hotline complaint.   (TR., Supp Hrg at 29).

Testimony during the hearing revealed that on October 14, 2015, "Jane Doe 5" was interviewed first by the MCD investigator and then by Det. Strong.  (TR., Supp Hrg at 30). Following, on October 15, 2015, MCD personnel determined that all of the children residing at the 4601 Morganford property were to be placed in protective custody, and Det. Strong assisted the female MCD investigators with removing the children.  (TR., Supp Hrg at 31).  It took some time for MCD to coordinate the removal of the children due to the need to find placement for multiple children in protective custody, so they did not return to the property until October 15th. (TR., Supp Hrg at 31-32).  In addition, on October 15, 2015, when they arrived to remove the children, Copp was present and the building was condemned for occupancy and boarded up due to numerous health and safety violations cited by the City of St. Louis Building Inspector.

(Govt. Exh. 23).  On that date as well, the City of St. Louis building inspector walked defendant Copp around the 4601 Morganford property and noted all of the building and code violations for Copp prior to the condemnation of the building.  (Govt. Exh. 23, TR., Supp Hrg at 33-34).

Testimony also revealed that while all Morganford occupants were being removed, Copp gave the keys to the property to Det. Strong and advised the detective that he had numerous burglary attempts in the rear of the location where he resided and that he wanted to make sure that law enforcement secured the doors.  (TR., Supp Hrg at 36).  Additionally, as the children were being removed from the property, a handgun and rifle were observed in plain-view by Det. Strong and seized for safekeeping.  (TR., Supp Hrg at 36). Also, in October 2015, some of the minors who resided at that 4601 Morganford property were interviewed on separate occasions at the Child Advocacy Center.  (TR., Supp Hrg at 36).  Following, on October 22, 2015, Det. Strong obtained a State of Missouri search warrant for Dojo Pizza for violations of Missouri state laws involving Sexual Misconduct Involving a Child and Human Trafficking (Labor).  (Govt. Exh. 1).  Prior to obtaining the search warrant Det. Strong confirmed that Copp's residential address was 4601 Morganford Rd., and he saw numerous pieces of mail which included the 4601 Morganford Rd. address sitting out in plain-view on the floor of the property next to a mail slot in the door at the rear of the building. (TR., Supp Hrg at 37-38, Govt Exhs. 14, 15 and 16).[1]

Prior to the execution of the state search warrant, on October 23, 2015, Det. Strong testified that on October 22, 2015, there was a SLMPD dispatch call in reference to a possible burglary that had occurred at 4601 Morganford Rd, because there was a windowpane missing from the Morganford property.  (TR., Supp Hrg at 114-115).  Following, Det. Strong testified that he arrived to the Morganford property on October 22, 2015, and conducted a protective

---

[1] It should be noted that the piece of mail in Exh 15 depicts "4601 Morganford Rd."

sweep and found no one inside, and he did not seize or access any electronics while. (TR., Supp Hrg at 86-87, 119-120).  On the next day, the SLMPD, assisted by Homeland Security Investigations ("HSI"), executed the search warrant and seized various items from the 4601 Morganford property, as sometimes federal and state law enforcement agencies assist each other with executing search warrants. (TR., Supp Hrg at 40).  The items seized from the 4601 Morganford property included computers, computer hard drives, thumb drives and other media listed in the search warrant return as outlined in Govt. Exh. 1. (TR., Supp Hrg at 41).

Subsequently, between November 2015 and December 2015, HSI and the Federal Bureau of Investigation ("FBI"), obtained multiple federal search warrants to take photos and video footage of the 4601 Morganford property, as well as to search multiple types of digital media as specifically outlined in the search warrants.  In March 2016, subsequent search warrants were obtained to search specifically for images of child pornography, as investigators had observed images of child pornography on the electronics initially seized and searched for evidence of labor trafficking. (Govt. Exhs. 2-11).  Additionally, prior to and subsequent to the execution of the aforementioned search warrants, investigators took photos and video footage of the 4601 Morganford property.  The video footage and photos that depict the building as one large piece of property where the occupants used the entire area as though it were a single address.  (See Govt. Exhs. 12, 14-22).

## LEGAL ANALYSIS

### I.      The property located at 4601 Morganford Rd. was searched lawfully pursuant to a valid search warrant

#### A.  Probable Cause

The state search warrant in this matter was valid and law enforcement had probable cause to search the 4601 Morganford property. "A valid warrant must be based upon a finding by a

neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, [or] contraband...may be found in the place to be searched." United States v. Romo-Corrales, 592 F.3d 915, 919 (8th Cir. 2010) (citation and internal quotations omitted.)  "Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, given the circumstances set forth in the affidavit." United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (citations and internal quotations omitted).  "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical, they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  Illinois v. Gates, 462 U.S. 213, 232 (1983) (citation and internal quotations omitted.)  "Applications and affidavits for issuance of a search warrant should be examined under a common sense approach and not a hyper-technical fashion."  United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993); See also, United States v. Carter, 413 F.3d 712, 714 (8th Cir. 2005).

Additionally, probable cause may be found in observations made by trained law enforcement officers or circumstantial evidence.  United States v. Jeanetta, 533 F.3d 651, 654 (8th Cir. 2008).  The failure to mention every single aspect of an investigation in an affidavit does not render the search warrant invalid.  United States v. Glenn, 577 F. Supp 930, 932 (W.D. Mo 1984); See United States v. Dennis, 625 F.2d 782, 791 (8th Cir.1980); United States v. Collins, 549 F.2d 557, 561 (8th Cir.1977).  "Omissions of other facts are not misrepresentations unless they cast doubt on the existence of probable cause."  Dennis, 625 F.2d at 791.  Moreover, to sustain a search warrant, a reviewing magistrate judge need only determine that the issuing judge had a substantial basis for concluding that probable cause existed.  See Gates, 462 U.S. at 238-39; United States v. Adams, 110 F.3d 31, 33 (8th Cir. 1997). Information contained within

the search warrant affidavit must be examined based upon the totality of the circumstances presented.  Gates, 462 U.S. at 230.  Once a judicial officer has issued a warrant based upon a finding of probable cause, that finding deserves great deference if there is a substantial basis for the finding.  Id. at 236.

 The initial state search warrant at issue in this case set out ample information upon which to find probable cause that contraband or evidence of a crime would be found at the 4601 Morganford property.  More importantly, the information provided in the affidavit for the search warrant in this matter was fresh, reasonable, corroborated and provided probable cause that there would be evidence linked to criminal activity found in the place to be searched.  "When the [issuing judge] relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." United States v. O'Dell, 766 F.3d 870, 873-75 (8th Cir. 2014); quoting, United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005). "Information may be sufficiently reliable to support a probable cause finding if the person supplying the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." United States v. Williams, 10 F.3d 590, 593 (8th Cir.1993).  Moreover, probable cause may be established in a variety of ways, including reliance on hearsay statements from reliable persons; hearsay statements from confidential informants corroborated by independent investigation; or on the observations of trained law enforcement officers. See Illinois v. Gates, 462 U.S. 213, 245 (1983); Draper v. United States, 358 U.S. 307, 313 (1959); and McDonald v. United States, 335 U.S. 451, 454 (1948).

 In this matter, the information contained in the affidavit was reported to law enforcement, the Missouri Children's Division and corroborated by victim interviews.  Thus, the information

provided sufficient probable cause to issue the warrant to search the 4601 Morganford property. In the Eighth Circuit, "[l]aw enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication the information is not reasonably trustworthy or reliable." United States v. Wallace, 550 F.3d 729, 734 (8th Cir.2008).   Accordingly, pursuant to the totality of the circumstances, the information provided to law enforcement, which was included in the affidavit, was reliable and provided a substantial basis for probable cause and issuance of the search warrant for 4601 Morganford Rd.

**B. Description of the Place to be Searched was Sufficient**

The large property located at 4601 Morganford Rd. was properly designated on the state search warrant, as that is where defendant COPP and the minor female victims resided and worked as outlined in the search warrant affidavit.  Even assuming, *arguendo,* that 4310 Neosho did exist as a valid address where COPP resided within 4601 Morganford, and law enforcement searched 4310 Neosho without a warrant, Copp's motion should still be denied because the place to be searched was sufficiently described in the search warrant affidavit and the search warrant.

The Eighth circuit applies a two-pronged test to determine whether the place to be searched has been described with sufficient particularity.  Under the two-prongs, the court must assess: (1) whether the search warrant describes the premises with sufficient particularity to enable its location with reasonable effort; and (2) whether there is any reasonable probability that another premise might be mistakenly searched. Id. at 819-820.  Additionally, "[a]n incorrect street address of the place to be searched is not necessarily fatal." United States v. Ridlinger, 805 F.2d 818, 819 (8th Cir.1986).

### i.     The search warrant described premises with sufficient particularity

First, the search warrant affidavit here describes 4601 Morganford Rd. with sufficient particularity to enable its location with reasonable effort. The state search warrant affidavit describes the place to be searched as "*a multi unit, multi function, building, previously a church, consisting of numerous previously occupied floors.  Each floor has multiple rooms being used. The building between Neosho Ave to the North and Gannet to the South.  The address is clearly listed on the east side of the building (see photo)*." (Govt. Exh. 1).  In addition, the search warrant describes 4601 Morganford "*as a multi unit structure, an old church, primarily made of brick construction.  The 3 front doors are located on the east side of the building and are primarily made of glass. The address is clearly marked 4601 above the center door*."  (Govt. Exh. 1).  Thus, the aforementioned description was appropriate.

Furthermore, pursuant to the aforementioned testimony at the evidentiary hearing and the video recording of the interior of the Morganford property as depicted in Govt Exh. 12, it is evident that (a) the occupants were able to move freely between the interior floor areas of the property, (b) there was a lack of exterior numbers other than 4601 on the building and (c) the occupants used the entire area of 4601 Morganford as though it were a single address.  Thus, there was no indication that 4310 Neosho existed as an address.  See, United Sates v. McCain, 677 F.2d 657, 661 (8th Cir. 1982)(warrant for 4510 Delmar, while in fact premises to be searched was at 4512 Delmar, did not require suppression of evidence because buildings had common wall, two of three front doors of building were unnumbered, while number on third door had been nearly obliterated and defendant controlled entire first floor area of 4510 and 4512 as if it were a single address); United States v. Lemmons, 527 F.2d 662 (6th Cir. 1975) (warrant for street number 9300 covered all of store, including that part reached through archway in building

numbered 9304); <u>Lyons v. Robinson</u>, 783 F.2d 737, 738 (8th Cir.1985).  Consequently, the 4601

Morganford Rd. property was described with sufficient particularity in the search warrant to

enable the executing officer to locate and identify the premises with reasonable effort. See,

<u>United States v. Gitcho</u>, 601 F.2d 369, 371 (8th Cir. 1979); <u>United States v. Gill</u>, 623 F.2d 540,

543 (8th Cir. 1980).

### ii.    No reasonable probability that another premises might be mistakenly searched

The facts as outlined in this case and through testimony show that there was no

reasonable probability that another premises might be mistakenly searched because (a) a photo of

the property was attached to the warrant, (b) surveillance had been conducted while at the

property, (c) there was no separate residential area designated with an address located within the

4601 Morganford property, (d) law enforcement did not see a separate residential address listed

on the outside of the 4601 Morganford Rd. property (e) the detective who prepared the affidavit,

including the photograph and the detailed description of the residence, also participated in the

search and (f) according to the St. Louis City Recorder of Deeds, 4310 Neosho does not exist.

See, <u>United States v. McCain</u>, 677 F.2d at 661 ("mistake is less likely when the premises have

been under surveillance ... a mistaken search is unlikely where, as here, the same officers both

apply for and execute the warrant.").

Additionally, where a search warrant contained information that particularly identified

the place to be searched, the Eighth Circuit has found the description to be sufficient even though

it listed the wrong address. <u>Id.</u> at 660-661.  Moreover, where the same officer both applied for

and executed the warrant, a mistaken search is unlikely. <u>Id.</u> at 661.  Additionally, the fact that

Detective Strong was the person who prepared the state search warrant paperwork and the officer

who executed the warrant, the items seized were within the list of items included in the affidavit

and warrant, so there was no risk that the wrong items would be seized by law enforcement. See United States v. Valentine, 984 F.2d 906, 909 (8th Cir. 1993) (finding a warrant sufficiently particular when it accurately described the target building, but listed the address as 3048 rather than 3050), cert. denied, 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993); United States v. Clement, 747 F.2d 460, 461 (8th Cir.1984) (finding a warrant valid when it listed the proper building number but the incorrect apartment number and the officer personally knew which apartment was target of search). Therefore, the state search warrant in this matter met the particularity requirement and the defendant's motion to suppress evidence should be denied.

### iii.    The 4310 Neosho address does not exist

The defendant's argument that 4310 Neosho is a separate residential address located in the rear portion of the 4601 Morganford property has no merit, as the address of 4310 Neosho does not exist.   There has been no evidence put before this Court to support the fact that 4310 Neosho is a valid residential or mailing address.  Additionally, there has been no evidence presented to this Court to show that there were utility services or mail service provided to a 4310 Neosho address.  Also, records from Union Electric Company d/b/a Ameren confirmed that no account records exist for a 4310 Neosho (Govt. Exh. 24, 24a).  Thus, Copp's argument that he allegedly lived at 4310 Neosho without access to water, electricity, gas, trash services, phone services, etc. is illogical.

Furthermore, there are no St. Louis City Recorder of Deeds records to prove that a 4310 Neosho address exists.  However, there are St. Louis City Recorder of Deeds records that depict 4601 Morganford Rd. as a section of property that consists of lots, 6, 7 and 8 at the corner of Neosho and Morganford Rd.  (Govt. Exh. 13).  Also, the aforementioned Recorder of Deeds description of the 4601 Morganford Rd. property matches the Google Maps aerial view of the

4601 Morganford property that was searched in this case, and it matches the description provided by law enforcement in the search warrants at issue in this case. (Defendant's Exh. B, Govt. Exh 1, 13).

Additionally, the Charter record admitted by the defense during the evidentiary hearing in this matter, showed a subscriber address of 4310 Neosho, but that does not conclusively prove the existence of 4310 Neosho as a separate residential address or valid mailing address.  The aforementioned Charter record was not accompanied by any billing, account, or service records for 4310 Neosho. (Defendant's Exh. J).  Moreover, Copp's argument that the 4310 Neosho address exists fails even further, as a St. Louis City building permit shows that 4310 Neosho was "wrecked" on July 9, 1963, and there is no other evidence before this Court that confirms that any other structure was erected as 4310 Neosho after the July 9, 1963 date. (Defendant's Exh. I). Thus, the argument that 4310 Neosho exists fails and the state search warrant in this matter was valid and properly executed.

**C.  <u>The search warrant was valid and the exclusionary rule should not be imposed</u>**

However, even if the search warrant failed to meet the particularity requirement of the Warrant Clause, the Fourth Amendment exclusionary rule should not be imposed in this case. "Not every Fourth Amendment violation results in exclusion of the evidence obtained pursuant to a defective search warrant. See <u>Herring v. United States</u>, 555 U.S. 135 (2009). [T]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands. <u>Arizona v. Evans</u>, 514 U.S. 1, 10 (1995). Rather, exclusion of evidence is a judicially created rule designed to safeguard Fourth Amendment rights generally through its deterrent effect.  <u>Herring</u>, 129 S.Ct. at 699 (quoting <u>United States v. Calandra</u>, 414 U.S. 338, 348, (1974)).  <u>Hamilton</u>, 591 F.3d at 1027-1028.  The exclusionary rule is not an individual right,

but it applies only where it results in appreciable deterrence. Herring, 129 S.Ct. at 700 (quoting

United States v. Leon, 468 U.S. 897, 909 (1984)) (emphasis added) (some internal marks

omitted); see also Penn. Bd. of Probation & Parole v. Scott, 524 U.S. 357, 368 (1998) (We have

never suggested that the exclusionary rule must apply in every circumstance in which it might

provide marginal deterrence.)." Hamilton, 591 F.3d at 1027-1028.

In this matter, Detective Strong's conduct did not amount to attenuated negligence where

the exclusionary rule should apply, as there was no intentional conduct that was patently

unconstitutional.  See Herring v. United States, 555 U.S. 135, 143 (2009).  Here, Det. Strong

prepared the affidavit and the search warrant.  The warrant clearly incorporated the affidavit.

The issuing judge signed the affidavit and search warrant, and Det. Strong, with full knowledge

of the items authorized to be seized, carefully executed the warrant.  "This is not the type of case

for which the deterrent effect of excluding evidence outweighs the social costs of letting guilty

and possibly dangerous defendants go free—something that offends basic concepts of the

criminal justice system.  Herring, 129 S.Ct. at 701 (quoting Leon, 468 U.S. at 908, 104 S.Ct.

3405); see also Watson, 498 F.3d at 434 (holding that suppression of evidence would not deter

police conduct that can be characterized as a minor, unintentional drafting oversight, unnoticed

by either the drafting officer or the issuing judicial commissioner)." Id.  Thus, even if the warrant

in this case failed to meet the particularity requirement of the Fourth Amendment's Warrant

Clause, Det. Strong's actions were objectively reasonable in believing that the warrant and its

reference to the affidavit and complaint authorized the seizure of the items removed from the

property located at 4601 Morganford.  Therefore, the exclusionary rule does not apply and the

motion to suppress evidence should be denied.

## II.    Lawful entry was made onto the 4601 Morganford Rd. property prior to execution of the state search warrant

As noted above, contrary to defendant Copp's arguments, Det. Strong did not conduct any improper searches and seizures inside 4601 Morganford Rd. prior to the execution of the state search warrant on October 23, 2015.  In October 2015, Det. Strong was permitted to enter the 4601 Morganford Rd. property pursuant to the following: (1) the "community caretaking" exception to the warrant requirement, (2) Missouri Revised Statute § 210.145, (3) the exigent circumstances exception to the warrant requirement, (4) the doctrine of a "protective sweep" and (5) the doctrine of "inevitable discovery."

### A.  Community Caretaking and Missouri Revised Statutes § 210.145 (October 13, 2015 and October 15, 2015)

Under the "community caretaking" exception, "a police officer may enter a [Fourth Amendment protected space] without a warrant as a community caretaker where the officer has a reasonable belief that an emergency exists requiring his or her attention." United States v. Smith, 820 F.3d 356, 360 (8th Cir. 2016) (quoting United States v. Quezada, 448 F.3d 1005, 1007 (8th Cir. 2006)).  "Community caretaking functions are performed by law enforcement to 'help those in danger.'"  Id. "The officer's subjective motivation is irrelevant." United States v. Conerd, 828 F. 3d 1009, 1111 (8th Cir. 2016)(quoting Brigham City v. Stuart, 547 U.S. 398 (2006)).  Also, Missouri Revised Statute §210.145(5), outlines protocol for the Missouri Children's Division:

> "The local office shall contact the appropriate law enforcement agency immediately upon receipt of a report which division personnel determine merits an investigation and provide such agency with a detailed description of the reports received.  In such cases the local division office shall request the assistance of the local law enforcement agency in all aspects of the investigation…"

Thus, the community caretaking exception and the Missouri Revised Statute § 210.145, are two valid justifications, which allowed Det. Strong to enter the 4601 Morganford premises with

Missouri Children's Division investigators on October 13, 2015, and October 15, 2015.

Defendant Copp also argues that on the aforementioned October dates, law enforcement searched his property and accessed electronics while there.  There has been no evidence presented to the Court to support this argument, via witness testimony or forensic analysis of the electronics seized in this matter[2].

### B.  Exigent Circumstances (October 22, 2015)

In this matter, Det. Strong's entry onto the 4601 Morganford premises was also permissible pursuant to the "exigent circumstances" exception to the warrant requirement due to the police dispatch call for a burglary, and because only a "protective sweep" was conducted on the premises and not a full search, there was no Fourth Amendment violation.

Law-enforcement officers may conduct a warrantless entry on a premises when exigent circumstances justify the intrusion.  Exigent circumstances exist when:  there is probable cause for the search or seizure when evidence is in imminent danger of destruction, Cupp v. Murphy, 412 U.S. 291, 294-96 (1973); safety considerations for the law-enforcement officers and the public require the search, Warden v. Hayden, 387 U.S. 294, 298-99 (1967); or the police are in hot pursuit of a suspect, United States v. Santana, 427 U.S. 38, 42-43 (1976).  The Eighth Circuit has held that the exigent circumstances exception justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed.  United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996).  When officers have probable cause to believe a burglary is in progress, there is an exigent circumstance that justifies a warrantless entry into the home. United States v. Brown, 449 F.3d 741, 747 (2006).

---

[2] It should be noted that the defense utilized the services an alleged computer expert who reviewed the Government's forensic analysis of electronics seized in this matter, and to-date no expert report or evidence of any kind has been provided to the Government or this Court to support the allegation that the electronics seized in this matter were accessed by law enforcement prior to the execution of the valid search warrants in this matter.

Furthermore, there has been no violation of the defendant's Fourth Amendment rights because the conduct in entering the 4601 Morganford Rd. premises was reasonable under the circumstances, so Det. Strong's entry did not violate the Fourth Amendment.  The reasonableness language of the Fourth Amendment was highlighted by the Supreme Court in Skinner v. Railway Labor Executives' Ass'n., 489 U.S. 602, 618, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989):

> "[T]he Fourth Amendment does not prescribe all searches and seizures, but only those that are unreasonably" ... what is reasonable, of course, "depends on the circumstances surrounding the search or seizure itself." ... Thus, the permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its *1569 promotion of legitimate governmental interests."

It has been said the "fundamental inquiry in considering Fourth Amendment issues is whether or not a search or seizure is reasonable under all the circumstances." United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); See also Dunaway v. New York, 442 U.S. 200, 219, 99 S.Ct. 2248, 2260, 60 L.Ed.2d 824 (1979); Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). See also United States v. Bloom, 975 F.2d 1447, 1455 (10th Cir.1992); United States v. Salinas–Cano, 959 F.2d 861, 865 (10th Cir.1992); United States v. Carr, 939 F.2d 1442, 1448 (10th Cir.1991) ( " 'Reasonableness' is the overriding test of compliance with the Fourth Amendment").

Furthermore, in *LaFave, Search and Seizure*, 2d Ed. § 6.6(b) it is acknowledged the courts have recognized the right to enter property for its protection:

> Police may also enter private property for the purpose of protecting the property of the owner or occupant or some other person. One possibility is where the police reasonably believe that the premises have recently been or are being burglarized. Thus, police entry is

> justified on the basis of a breaking and entering call to police plus the discovery of an open door which bore evidence of being pried open, of activation of a burglar alarm at those premises, of the observation of lights on within and strange cars parked about a house whose occupants a neighbor says are on vacation, and of a neighbor's report that strangers were seen coming from a cabin in an area where many cabins had recently been broken into. By the same reasoning, it would seem that police entry is justified where persons possibly intent upon vandalism are reported by a neighbor to have entered a vacant house. Indeed, entry would be permissible when commercial premises are found to be unlocked and unattended in the evening hours. (Emphasis added).

See Mann v. Cannon, 731 F.2d 54 (1st Cir.1984) (entry into vandalized premises).

Additionally, to determine whether the officers had probable cause to enter a property, a reviewing court considers the "totality of the circumstances" to arrive at a "commonsense" conclusion whether there was a "fair probability" a burglary was in progress. Illinois v. Gates, 462 U.S. 213, 239 (1983). In this matter, as of October 22, 2015: (1) 4601 Morganford Rd. had been condemned and boarded up, (2) defendant Copp was no longer in the custody of the SLMPD, and (3) there was a report of a possible burglary inside the Morganford property which contained suspected evidence of crimes. Thus, it was reasonable for Det. Strong to enter the premises to assess if a burglary had occurred as defendant Copp had informed Det. Strong that there had been recent burglary attempts in the premises, and lastly entry was permissible because suspected evidence of a crime could have possibly been stolen or destroyed inside the property. Therefore, the actions of law enforcement were reasonable, so Det. Strong's entry at the 4601 Morganford property did not violate the Fourth Amendment.

## C.  Protective Sweep (October 22, 2015)

Moreover, as no evidence was seized from the property and Det. Strong was inside the premises for a short amount of time to confirm that no burglars were present, this was an instance where a "protective sweep" was permissible to protect the property inside the premises,

as well as those outside of the building.  "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers and others." Maryland v. Buie, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).  Police officers must have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene," Id. at 334.

"A 'protective sweep' is a quick and limited search of premises .... It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id. at 327; see also United States v. Miller, 430 F.3d 93, 99 (2d Cir.2005) (agreeing with the First, Seventh, Fifth, Sixth, one panel of the Ninth, and D.C. Circuits that protective searches may be undertaken even without an arrest warrant); United States v. Caraballo, 595 F.3d 1214, 1224–25 (11th Cir.2010)(applying the "protective sweep" doctrine, where officers boarded a vessel and opened the cabin door to ensure that there were no additional persons on board); Leaf v. Shelnutt, 400 F.3d 1070, 1087 (7th Cir.2005) (officers reasonably conducted protective sweep where they entered home to ascertain whether burglary had occurred and had substantial reason to believe their safety might be at risk).

Here, it is undisputed that Det. Strong limited his search to places where persons could be hiding.  Det. Strong testified that he arrived to the Morganford property on October 22, 2015, and conducted a protective sweep and found no one inside, and he did not seize or access any electronics while there. (TR., Supp Hrg at 86-87, 119-120).  "Thus, the scope of the intrusion did not exceed that justified by the exigencies presented."  United States v. Johnson, 9 F. 3d 506, 510 (6th Cir. 1993), quoting Mincey v. Arizona, 437 U.S. 385, 393 (1978).  Det. Strong did no more than secure the premises to ensure the protection of everyone on the scene and to prevent

the loss or destruction of the owner's property.  If investigating a potential burglary in progress is part of a police officer's routine community caretaking functions, then the officers' actions in this case cannot be deemed unreasonable.  United States v. Singer, 687 F.2d, 687 F. 2d 1135, 1144 (8th Cir. 1982); See United States v. Nord, 586 F.2d 1288 (8th Cir. 1978); Reardon v. Wroan, 811 F.2d 1025, 1029 (7th Cir. 1987)(Where, as here, the police are called upon to respond to a crime reported to be in progress, we recognize that police judgments should be afforded an extra degree of judicial deference); United States v. Moore, 477 Fed. Appx. 102, 108 (4th Cir. 2012)(*Leon* good faith exception applied and "protective sweep" permitted where officers had received a report of an attempted burglary at the residence and had observed a broken basement window at that location, the court held that the officers were justified in thinking that the basement could have harbored a person who posed a danger to nearby residents).  Thus, Det. Strong's entry was a valid protective sweep.

### D.  Inevitable Discovery

Furthermore, all of the evidence seized in this matter is admissible under the *inevitable discovery* doctrine, as a search warrant had already been obtained prior to entry inside the premises on October 22, 2015, and that search warrant was executed the next day.  Additionally, the evidence seized from 4601 Morganford would have been inevitably discovered during the execution of two subsequent federal search warrants (Govt. Exh. 2: search warrant for photos/video footage of 4601 Morganford property, and Govt. Exh. 3: search warrant for 4601 Morganford property and electronics), and thus the evidence is not subject to suppression. Murray v. United States, 487 U.S. 533 (1988); Nix v. Williams, 467 U.S. 431 (1984).  The United States Supreme Court has previously held that evidence need not be suppressed "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or

inevitably would have been discovered by lawful means." Id. at 444; See also United States v. Thomas, 524 F.3d 855 (8th Cir.2008).  The inevitable discovery doctrine affirms the belief that police should not be placed in a worse position than they would have occupied in the absence of error or misconduct.  Nix. 467 U.S. at 444.

In addition, to prevail under the inevitable discovery exception, the government must establish "(1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." United States v. Pruneda, 518 F. 3d 597, 604 (8th Cir. 2008), quoting United States v. Conner, 127 F.3d 663, 667 (8th Cir.1997); See United States v. Canty, 617 Fed. Appx. 630, 632 (8th Cir. 2015), citing United States v. Glenn, 152 F. 3d 1047, 1049 (8th Cir. 1998).  Lastly, a "trial court need not suppress evidence gained through an independent source, notwithstanding any prior illegality."  Glenn, 577 F. Supp at 932, quoting United States v. Beck, 662 F.2d 527, 530 (8th Cir.1981). See also United States v. Perez, 714 F.2d 52, 54 (8th Cir.1983); United States v. Torgersen, 690 F.2d 682, 684 (8th Cir.1982).

In this case, the investigation started prior to the burglary call on October 22, 2015, and nothing in the state search warrant affidavit submitted to support the warrant referenced any information observed during entry onto the 4601 Morganford premises on October 22, 2015. Here, on October 22, 2015, only a protective sweep was conducted inside of 4601 Morganford Rd. and Det. Strong did not seize any property.  Thus, the evidence would have inevitably been discovered regardless of whether or not Det. Strong viewed areas of the property prior to execution of the search warrant on October 23, 2015. Additionally, law enforcement subsequently obtained the two aforementioned federal search warrants (Govt. Exh. 2 and Govt.

Exh. 3), for the 4601 Morganford Rd. premises, which allowed them to view the premises and subsequently seize evidence from said premises.  Accordingly, as there was already a state search warrant soon to be executed, and law enforcement obtained two subsequent federal search warrants, all of the evidence would have been inevitably discovered.

Thus, any contact made by Det. Strong's with the 4601 Morganford Rd. premises in October 2015 was permissible pursuant to (1) the "community caretaking" exception to the warrant requirement, (2) Missouri Revised Statute § 210.145, (3) the exigent circumstances exception to the warrant requirement, (4) the doctrine of a "protective sweep" and (5) the doctrine of a "inevitable discovery," and therefore his motion to suppress should be denied.

### III.   All subsequent federal search warrants were supported by ample probable cause and were valid

All of the aforementioned arguments made pursuant to the issuance of the valid state search warrant for the 4601 Morganford property and electronics seized are hereby incorporated into this section.  "When the [issuing judge] relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." United States v. O'Dell, 766 F.3d 870, 873-75 (8th Cir. 2014); quoting, United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (internal quotation marks omitted).

Here, defendant Copp argues that because the federal search warrants contain information that was included in the state search warrant, than all subsequent federal search warrants are invalid due to the "fruit of the poisonous tree" doctrine.  Defendant does not argue that the federal search warrants lack probable cause, he only argues that because the federal warrants included information generated from the SLMPD investigation and state search warrant affidavit, then the federal search warrants are invalid.

In determining whether to apply the "fruit of the poisonous tree" doctrine, a court must determine whether "the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  Wong Sun v. United States, 371 U.S. 471, 488 (1963).  In this matter, as outlined above, the state search warrant was valid, and the subsequent federal search warrants at issue in this case set out ample information upon which to find probable cause that contraband or evidence of a crime would be found in the electronics, email address and Facebook accounts. The information provided in each federal search warrant affidavit was fresh, reasonable, corroborated and provided substantial probable cause that there would be evidence linked to criminal activity found in the place to be searched.

Furthermore, defendant Copp has not presented any forensic evidence or testimony to support the allegation that law enforcement seized or accessed electronic evidence prior to the execution of the state search warrant and prior to the execution of all of the federal search warrants.  As outlined in the Government's Response to Defendant's Motion to Suppress, the federal search warrant affidavits outlined in specific detail: (1) the type of child pornography images found on defendant Copp's computer, (2) a Facebook account linked to a "Jane Doe" and ultimately defendant Copp, which contained images that depict several of the "Jane Does" in lascivious displays of their genitals, (3) several of the aforementioned pornographic images depict the "Jane Does" while inside the 4601 Morganford Rd. property and (4) an email address linked to Copp which contained several emails eluding to sexual activity involving one of the "Jane Does," defendant COPP and others.  Therefore, Copp's implausible allegations that investigators illegally accessed his electronics while they were inside the Morganford property, and downloaded images of child pornography (which include images of the resident "Jane

Does") and emails regarding sexual activity with a child onto the electronics, email and

Facebook accounts are completely outrageous and unsubstantiated.

Lastly, the defendant argues that investigators exceeded the scope of the warrant as to

Govt. Exh. 3, yet investigators only seized papers and electronics as outlined in the affidavits and

search warrant attachments.  (TR., Supp Hrg at 86-87, 119-120, 141).  Also, there is no evidence

that any other address existed outside of 4601 Morganford Rd. for the property searched in this

case, as the boards covering each entry point to the Morganford property were labeled "4601"

when the federal investigators arrived to the property. (Govt Exh. 17-22).  Consequently, the

federal search warrants for the seizure of electronics and paperwork, and for the analysis of the

electronics seized, the aforementioned Facebook accounts and the email address in this case were

also valid, and the defendant's motion to suppress evidence should be denied.

### IV.    Rule 41 of the Federal Rules of Criminal Procedure was not violated

Here, the defense has made a blanket assertion that the Government has somehow

violated Rule 41, without citing any specific section of the rule and without providing any basis

for the assertion.  Defendant COPP attempts to bring the instant search into the ambit of Rule 41

but there is no section of the rule applicable in this matter, and the defendant has not argued as

such and has not provided a plausible legal basis to assert any such argument.

### V.    The defendant was not in custody so no Miranda warnings were required

Defendant Loren Copp was not in custody and voluntarily agreed to speak with a

Missouri Children's Division investigator in the presence of Det. Strong in October 2015.

Approaching COPP at his residence did not constitute custodial custody.  Since COPP was never

in custody during the encounter, the detective was not required to advise him of his Miranda

rights. Miranda v. Arizona, 384 U.S. 436 (1966).  Also, Miranda does not apply if the person is

not in custody, even if the person is suspected of criminal activity or is a focus of the investigation. <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977); <u>Beckwith v. United States</u>, 425 U.S. 341, 345 (1976).  Accordingly, as COPP was never in custody, the statements made by COPP are not subject to suppression.

Previous holdings handed down by the Eighth Circuit of the United States Court of Appeals have identified several common indicia of custody. "These indicia of custody relate to the specific police practices employed during questioning which tend to either mitigate or aggravate an atmosphere of custodial interrogation. This inquiry into the indicia of custody has generally focused on an examination of (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning."  <u>United States v. Griffin</u>, 922 F.2d 1343, 1359 (8th Cir. 1990).

As referenced above, defendant COPP was at his residence, not in custody and free to terminate the line of questioning at the time he made verbal statements.  Under the Eighth Circuit analysis, (1) the defendant was informed at the time of questioning that the questioning was voluntary and he was not considered under arrest; (2) the defendant possessed unrestrained freedom of movement during questioning; (3) the defendant voluntarily acquiesced to official requests to respond to questions; (4) there were no strong arm tactics or deceptive stratagems

employed during the questioning; (5) there were only two people present, not in uniform, at the time of questioning, so the atmosphere of the questioning was not police dominated; and (6) the defendant was not placed under arrest at the termination of the questioning.  *See*, United States v. Martinez, 462 F.3d 903, 908-909 (8th Cir. 2006); United States v. Axsom, F.3d 496, 503 (8th Cir. 2002); United States v. Dockery, 736 F.2d 1232, 1234 (8th Cir.1984) (no custody where suspect not physically restrained during interview);    United States v. Rorex, 737 F.2d 753, 757 (8th Cir.1984) (no custody where no attempt to restrict suspect's freedom of action); United States v. Jones, 630 F.2d 613, 616 (no custody where suspect had not been subjected to police escort and was in her own home under no physical restraint); United States v. Helmel, 769 F.2d 1306, 1320 (no custody where suspect had free movement within the house).

Application of the aforementioned factors, and considering the totality of the circumstances, leads to the conclusion that the COPP was not "in custody" within the meaning of Miranda.  There is nothing to support a finding that defendant COPP's assertion that he was "in custody." United States v. Perrin, 659 F.3d 718 (8th Cir. 2011)(defendant not "in custody" when questioned following the execution of search warrant by officers in full tactical gear at residence.); United States v. Jorgensen, 871 F.2d 725 (8th Cir. 1989)(defendant not "in custody" when he went to the FBI office and submitted to a two hour interview).  Therefore, the defendant's motion to suppress statements should be denied.

**VI.     There is no basis for disclosure of the confidential source in this matter**

The Government objects to disclosure of the identity of the confidential source/informant. The law is well settled that the Government has a privilege to withhold the identity of its informants.  McCray v. Illinois, 386 U.S. 300 (1967).  "The defendant bears the burden of demonstrating the need for disclosure and the court must weigh the defendant's right to

information against the Government's privilege to withhold the identity of its confidential informants." United States v. Harrington, 951 F.2d 876, 877 (8th Cir. 1991).  See also, McCray, 386 U.S. at 310; Roviaro V. United States, 353 U.S. 53, 60-62 (1957)(holding that such a motion will be denied where the information is sought only to attack a search warrant affidavit and there is no showing that disclosure would establish innocence); Devose v. Norris, 53 F.3d 201, 206 (8th Cir. 1995).  Disclosure should not be ordered unless it is vital to a fair trial.  United States v. Disbrow, 768 F.2d 976, 981 (8th Cir. 1985).  "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Harrington, 951 F.2d at 877.  In addition, "a trial court abuses its discretion if it orders disclosure absent a showing of materiality." Id.; see, United States v. Grisham, 748 F.2d 460, 463 (8th Cir. 1984).

Additionally, in United States v. Lindsey, 284 F.3d 874, 876-77 (8th Cir. 2002), the Eighth Circuit noted the strong presumption against disclosure of a tipster's identity and promptly rejected the defendant's argument for the information.  In so holding, the Lindsey Court reasoned that the defendant bears the burden to demonstrate that the result of the proceeding would be different if the tipster was known to him, and that any other result would sanction a "fishing expedition" by the defendant. Id.  Accordingly, the defendant's motion to disclose the confidential source should be denied.

## CONCLUSION

All of the search warrants obtained and executed in this matter were within the scope of the Fourth Amendment.  Any statements made by the defendant are not suppressible because he

was not in custody, and disclosure of the identity of the confidential source is being sought only to attack the state search warrant affidavit and there is no showing that disclosure would establish innocence.

WHEREFORE, based on the foregoing and the testimony presented at the evidentiary hearing in this matter, the Government respectfully requests that this Court deny defendant's motions to suppress evidence and statements, and motions for a *Franks* hearing and disclosure of a confidential source.

Respectfully submitted,

CARRIE COSTANTIN
Acting United States Attorney

   /s/ Jennifer A. Winfield_____
JENNIFER A. WINFIELD #53350MO
Assistant United States Attorney
111 South 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2017, the foregoing was filed electronically with the Clerk of the Court to be served via email upon all counsel of record.

   /s/ Jennifer A. Winfield
JENNIFER A. WINFIELD #53350MO

28