UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. S1-4:16CR00159 AGF |
| LOREN ALLEN COPP, ) | |
| a/k/a "Sensei," ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGEMENT OF ACQUITTAL AND A NEW TRIAL**

COMES NOW the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Jennifer A. Winfield, Assistant United States Attorney for said District, and files its Response in Opposition to Defendant's Motion for Judgement of Acquittal and a New Trial.

Defendant Loren Copp ("Copp") was charged in a superseding indictment with: Counts One and Two: Production of Child Pornography; Count Three: Attempted Production of Child Pornography, all in violation of Title 18, United States Code, Section 2251(a); Count Four: Possession of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B); Counts Five and Six: Use of Interstate Facilities to Persuade, Induce, Entice, or Coerce a Minor to Engage in Sexual Activity, in violation of Title 18, United States Code, Section 2422(b); and Counts Seven, Eight and Nine: Use of Interstate Facilities to Transmit Information with the Intent to Entice, Solicit or Encourage a Minor to Engage in Sexual Activity, in violation of Title 18, United States Code, Section 2425. The case proceeded to a bench trial

1

beginning on Monday April 11, 2018. Closing arguments in this matter were submitted on April 24, 2018.

During its case-in-chief, the Government presented the testimony of ten different witnesses and over 430 exhibits, including child pornographic images/videos and emails regarding activity described in all counts of the indictments, as well as images and videos described in the Government's Rule 404(b) notice, which demonstrated defendant Copp's participation in the charged offenses.

On December 26, 2018, this honorable Court convicted defendant Copp of Counts One and Two: Production of Child Pornography; Count Three: Attempted Production of Child Pornography; Count Four: Possession of Child Pornography; Counts Five and Six: Use of Interstate Facilities to Persuade, Induce, Entice, or Coerce a Minor to Engage in Sexual Activity and Counts Eight and Nine: Use of Interstate Facilities to Transmit Information with the Intent to Entice, Solicit or Encourage a Minor to Engage in Sexual Activity. This matter is now before the Court on the post-trial motion filed by defendant Copp seeking a judgment of acquittal and a new trial. For the reasons stated below, there is absolutely no justification for the defendant to obtain the relief requested and the motion should be denied.

## ANALYSIS

I. Applicable Standards

    A. Judgment of Acquittal

A motion for judgment acquittal after a jury verdict is governed by Rule 29(c) of the Federal Rules of Criminal Procedure. Rule 29(c) provides:

  (c)  **After Jury Verdict or Discharge**.

    (1)  **Time for a Motion**. A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.

    (2)  **Ruling on the Motion**. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

    (3)  **No Prior Motion Required**. A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

Rule 29(a) provides that a judgment of acquittal must be entered if there is insufficient evidence to sustain a conviction. "The standard for determining whether evidence is insufficient is very strict, requiring acquittal only where there is 'no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" United States v. Munoz, No. 11‒167, 2012 WL 3031143 (D.Minn. July 25, 2012), citing United States v. Gomez, 165 F.3d 650, 654 (8th Cir.1999). "When a district court considers a motion for acquittal, it does so with 'very limited latitude.' The court should not assess the credibility of the witnesses or weigh the evidence." United States v. Thompson, 285 F.3d 731, 733 (8th Cir.2002). The Court is to view the "evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Garcia, 646 F.3d 1061, 1066 (8th Cir. 2011) (citation and internal quotations omitted); See also, United States v. Vore, 743 F.3d 1175, 1180 (8th Cir. 2014). "This standard is quite strict' and the court will not disturb the conviction unless 'no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" Id. (quoting United States v. Wright, 739 F.3d 1160, 1167 (8th Cir. 2014)).

B. New Trial

Pursuant to Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires...." "Motions for new trials based on the weight of the evidence generally are disfavored…. A district court may grant a new trial for insufficiency of the evidence only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." United States v. McCraney, 612 F. 3d 1057, 1064 (8th Cir. 2010), *citing* United States v. Huerta-Orozco, 272 F. 3d 561, 565 (8th Cir. 2001); See, also, United States v. Harris-Thompson, 751 F.3d 590, 600 (8th Cir.2014). However, it is important to note that "[T]his authority should be exercised sparingly and with caution." United States v. Malloy, 614 F. 3d 852, 862 (8th Cir. 2010), *citing* United States v. Lincoln, 630 F. 2d 1313, 1319 (8th Cir. 1980).

## ARGUMENT

A. Motion for Judgment of Acquittal

As outlined in his filing in grounds 18 and 19, Copp asserts his constitutional rights were denied because the Court did not grant his motion for judgment of acquittal, but Copp does not provide an alleged basis for this assertion. (Doc. 218).

A district court has very limited latitude in ruling upon a motion for judgment of acquittal. A motion for judgment of acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged. The evidence need not exclude every reasonable hypothesis except guilt; the essential element of the crime may be proven by circumstantial as well as direct evidence." United States v. Baker, 367

4

F.3d 790, 797 (8th Cir. 2004).

Here, the Government overwhelmingly proved that Copp produced and attempted to produce child pornography of the charged victims, as well as possessed images and videos of child pornography, in addition to using the internet and cell phones to persuade, induce, entice, or coerce the minor victims to engage in sexual activity. The evidence presented included:

- A Dell Optiplex 760 computer (Item 20) located by police in Copp's office at the Dojo property, which contained a hard drive that contained numerous erotic and pornographic pictures of various minor victims in this case See Govt. Exh. 1, 1a.

- Photos taken of a computer screen in the background, which appeared to be pornographic images of an identified minor victim, as well as several other pictures that depicted printed photos of the same child pornography with a penis and/or semen on or near the photos. See Govt. Exh. 12a-12h.

- Photos emailed from lcopp1969@gmail.com and dojopizza@gmail.com from a T-Mobile phone, and the systems indicated that all of the emails were opened/read.   See Govt. Exh. 13-13i, 37-37g.

- Incriminating files located in the unallocated space in the file folder E:/Users/Loren/Videos/BlackBerry. See Govt. Exh. 11.

- Sexually coercive or deceptive emails directed towards "Jane Doe 1" which were sent between Copp's email address and a Yahoo email account for "L.Baker." See Govt. Exh. 27a-27m.

- Notes from Copp to "Jane Doe 1," "Jane Doe 3," and "Jane Doe 5." One specific note to "Jane Doe 1" referred to the victim as "My secrete wife." See Govt. Exh.

5

14, 19a, 19b.

- Several identifiers for Copp, Dojo Pizza, and "MRCKA" including authorship or editing documents, email addresses and Internet Explorer records found on the Dell Optiplex 760 computer (Item 20). See Govt. Exh. 32-32d.

- Numerous erotic and pornographic pictures of various minor victims on the Purex External Hard Drive (Item 23), which was located by police in Copp's office at the Dojo property. See Govt. Exh. 15, 17a, 17b, 18, 21, 25, 26, 28.

- Evidence from the hard drive which depicted the computer's name was "Loren-PC," the OS registered owner was "Loren" and the only user created account on the system, was "Loren" and a it had logon password of "majiryu." Exh. 23-23g.

- A folder named "daughter day" in the file path, "Users/Loren/Documents/school papers/For court/Symantec" that contained numerous images of child pornography, as well as numerous pornographic or erotic photos of minors in file path, "Users/Loren/Pictures/gangandstreets/New Folder." Also, a photo of "Jane Doe 1" located in file path "Users/Loren/bank/new g" which had metadata that the photo was taken on 03/31/2012 at 12:23:46 hours, and a thumbnail of this image was also located in the thumbcache on the Dell Optiplex 760 computer (Item 20). See Govt. Exh. 3-3r, 4-4m, 5-5o, 9-9e.

- Copies of 14 of the 16 "Linda Baker" emails, which were described above and found on the Dell Optiplex 760 computer (Item 20) were also found on the Purex External Hard Drive (Item 23).   See Govt. Exh. 31.

- On Copp's Hitachi hard drive (Item 8), 150 video segments were found which

6

included a video of a female child (age between 4 years old and 8 years old) lying on a bed nude with an adult male attempting to have sexual intercourse with her. The child's face can be seen but the males face cannot be seen. There were also video still captures from the "kkp.wmv" and "Movie.wmv" movies, which depict "Jane Doe 3" and "Jane Doe 4" undressing and in Copp's church office and in a lascivious display of their genitals. In addition, multiple thumbnail pictures were found which displayed "Jane Doe 1," "Jane Doe 3" and "Jane Doe 4," dressing and undressing and showing their breasts, as well as several pictures of a mature male having sex with what appears to be a minor female. See Govt. Exh. 16-16l, 30.

- Evidence of a Facebook account which depicted a facial image of a minor female with dark hair and green background for the profile picture, and a Facebook picture ID of "230136607162581" for this profile image. See Govt. Exh. 28.

- The Facebook profile picture of "Chrissy" was located in the: Users\Loren\pictures\ folder on Copp's Purex External Hard Drive (Item 23), where the image was saved with the same "230136607162581" picture ID number provided by Facebook. See Govt. Exh. 20, 22-22b, 38-38a

- Child pornographic images received by "Chrissy's" Facebook account (which included numerous pornographic images of the victims), were saved to Copp's computer media with the same Facebook picture ID numbers linked to the same images received by "Chrissy." See Govt. Exh. 8-8e, 8y, 8z.

7

- Facebook records show that "Jane Doe 1," "Jane Doe 3" and "Jane Doe 5" were Facebook messaging with "Chrissy" and sending lewd and lascivious images at the request of Copp posing as "Chrissy." See Govt. Exh. 6-6p.

- Records that show that the "108.193.145.54" IP address was also found in the forensic exam of Copp's computers, and multiple times this IP address was found in relation to emails sent by Copp's email account and other noted evidence establishing that the "108.193.145.54" IP address was assigned and used by defendant Copp as the means to access the internet at the Dojo Pizza residence. See Govt. Exh. 8f-8w, 33, 34, 35.

- Images depicting "Jane Doe 5's" vagina and Copp's penis, was taken and saved on Copp's computer media as 1723915.jpg, which was found in the folder path of "Loren-Pictures Folder\Pictures\gang and streets\New folder (2)\New folder."

- Facebook chats outlining how Copp posing as "Chrissy" directed "Jane Doe 1," "Jane Doe 3" and "Jane Doe 5" to take naked pictures while performing sexual acts together, and these images were all saved on Copp's Purex External Hard Drive (Item 23).

- Facebook chats where "Jane Doe 1" confronts the "Chrissy" profile, regarding "Jane Doe 1's" belief that "Chrissy" is actually defendant Copp, because "Jane Doe 1" heard Copp's computer device alerting when their Facebook messages were received.

- a "series" of pictures discovered on Copp's computers, which depict "Jane Doe 1" in a lascivious display of her genitals located within "Jane Doe 1's" bedroom

8

- A "series" of pornographic images depicting "Jane Doe 3" located on Copp's computer devices.

- A "series" of pornographic images depicting "Jane Doe 5" located on Copp's computer devices.

In addition to the aforementioned evidence, the Government presented additional evidence of Copp's involvement in production of child pornography, as well as his use of Facebook and email to entice, persuade and induce the victims to take pornographic pictures of each other and send them to Copp via Facebook where he posed as a 13-year old by the name of "Chrissy."  The Government also presented corroborated testimony of the victims in this matter.[1]

In summary, during trial, "Jane Doe 1" testified regarding ongoing sexual abuse she endured at the hands of Copp over several years. This abuse took place at a home in South County and the Dojo property in St. Louis City. "Jane Doe 1" also reviewed and identified an extensive number of pornographic photographs, which were taken of her by Copp and saved to his computer. "Jane Doe 1" also identified herself and other victims on numerous pornographic images sent via Facebook to Copp's "Chrissy" account, and detailed conversations that she had with Copp who was posing as a 13 year-old "Chrissy," regarding the production of those pornographic images. Also, during her testimony "Jane Doe 1" detailed emails sent by Copp posing as a school resource officer ("Linda Baker"), trying to get "Jane Doe 1" to participate in

---

[1] As official transcripts have not been generated for this matter, the following information regarding the victims' testimony was generated from the Government's recollection.

9

sexual activity with Copp by the use of coercion and fear.

The Government also presented evidence where "Jane Doe 3" testified that Copp video-taped sex acts she and Copp engaged in while they were at a home in South County, and she watched one of those videos with Copp once in his bedroom. In addition, "Jane Doe 3" identified the video camera used by Copp, which was found at the Dojo proprty, which Copp used to memorialize his sexual abuse of "Jane Doe 3."  Lastly, "Jane Doe 3" also identified herself and other victims on numerous pornographic images Copp took of her, as well as various images sent via Facebook to Copp's "Chrissy" account, and detailed conversations that she had with "Chrissy" regarding the production of those pornographic images. Lastly, during trial "Jane Doe 5" too identified herself and other victims on numerous pornographic images found on Copp's computers, as well as various images sent via Facebook to Copp's "Chrissy" account, in addition to inappropriate sexual contact Copp had with "Jane Doe 5" while she resided at the Dojo property. The aforementioned images depicted the minors in a lascivious display of their genitals.

In this circuit, a victim's testimony alone can be sufficient to prove the sex crimes in question. United States v. Bell, 761 F. 3d 900, 907 (8th Cir. 2014); See also, United States v. Gabe, 237 F.3d 954, 961 (8th Cir.2001) (upholding a conviction for abusive sexual contact based on the testimony of the teenage victim), citing United States v. Wright, 119 F.3d 630, 633–34 (8th Cir.1997); United States v. Seibel, 712 F.3d 1229, 1237 (8th Cir.2013) ("Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict." quoting United States v. Kenyon, 397 F.3d 1071, 1076 (8th Cir.2005)).  In addition, the forensic evidence retrieved from Copp's computers, Facebook account and email accounts corroborated

10

the victims' testimony.

In addition, the guilty verdicts on Counts 1 thru 6, 8 and 9 of the superseding indictment were determined by the Court in a stipulated bench trial and were entirely consistent with the weight of the evidence and proven beyond a reasonable doubt as outlined in the Government's Notice of Legal Elements previously filed in this matter. (Doc. 209).   Therefore, this is not a typical motion for acquittal because there is no jury verdict to assess, as the Court has already determined that the government proved defendant's guilt beyond a reasonable doubt as to Counts 1 thru 6, 8 and 9 of the superseding indictment. United States v. Kowal, 486 F. Supp. 2d 923, 939 (N.D. Iowa 2007); See, United States v. Mitchell, 388 F.3d 1139, 1142–44 (8th Cir.2004) (affirming the district court's denial of a motion for acquittal after a bench trial and stating: "When the determination of a question of fact is also determinative of the ultimate question of guilt, it is the duty of the appellate court to determine whether there is substantial evidence, taking the view most favorable to the government, to support the fact determination by the trial court." (quoting United States v. Swayne, 700 F.2d 467, 471–72 (8th Cir.1983)(quoting United States v. Cady, 567 F.2d 771, 774 (8th Cir.1977).

Therefore, as outlined above, there was substantial evidence presented at trial to convict the defendant on all counts, there are no grounds for a judgement of acquittal as to Counts 1 thru 6, 8 and 9 in this matter, and the defendant's argument has no merit.

    B.   <u>Motion for New Trial</u>

In addition to seeking a judgment of acquittal as to all Counts of the superseding indictment, Copp argues nineteen grounds for a new trial. None of these grounds have merit and

no new trial should be ordered.2 Copp's alleged grounds for a new trial are as follows:

      a)    <u>The Government Used Evidence that Should Have Been Suppressed (1)</u>

The Court did not err in sustaining the report and recommendation generated in this matter. Here, Copp once again reiterates his previous arguments regarding the pre-trial motions filed to suppress evidence and statements in this matter, which have been litigated and denied. (Docs 119). The Government incorporates its previous responses, facts stated therein, and the arguments set forth in those pleadings. (Docs. 76, 115, 124). Thus, Copp's claim has no merit and his motion for a new trial should be denied.

      b)    <u>Disclosure of a Confidential Source Should Have Been Granted (2)</u>

The Court did not err in denying Copp's motion to disclose a confidential source, and as the identity of the confidential source was ultimately revealed prior to trial, this issue is now moot. During the pretrial phase, Copp filed a motion to disclose a confidential source referenced in a Missouri State search warrant involved in this matter (Doc. 60). Following, the Government filed a response in opposition to Copp's motion, and the Court denied his motion for disclosure of the confidential source. (Docs. 115, 119). Following, prior to the start of trial in this matter, the Government filed a Notice of Disclosure notifying this Court that the defendant was provided the identity of the aforementioned confidential source. (Doc. 153). Therefore, Copp's claim is now moot and his motion for a new trial should be denied.

      c)    <u>Denial of Counsel's Motion to Withdraw was Prejudicial (3)</u>

The Court did not err in denying counsel's motion to withdraw, as Copp agreed to retain

---

2 As official transcripts have not been generated for this matter, the following information regarding the sequence of events at trial and evidence admitted was generated from the Government's recollection.

12

an attorney as standby counsel and represent himself, thus the denial of the motions to withdraw is irrelevant. On January 16, 2018, Copp's attorneys filed motions to withdraw and this Court denied those motions. (Docs 137, 138). It should be noted that prior to the denial of those motions, there were twelve pretrial continuances in this matter, and the trial was removed from the November 6, 2017, and the February 5, 2018, trial dockets at the request of the defendant. (Docs. 120, 134). Additionally, there was an in-depth status conference hearing held on January 12, 2018, regarding defense counsel's availability and the trial was continued once again, based on the defendant's request, to April 8, 2018. (Doc. 139). Following, on April 2, 2018, the defendant made a request to proceed *pro se* with the Rosenblum Schwartz firm as standby counsel and after an extensive hearing on the matter the Court granted Copp's request to represent himself and Copp filed a signed notice accepting his new standby counsel. (Doc. 160, 169-1). Therefore, any denial of the defense counsel's motions to withdraw in January 2018 is not relevant as defendant voluntarily chose to represent himself and proceeded to trial with standby counsel. Therefore, Copp's claim has no merit and his motion for a new trial should be denied.

        d)        <u>Denial of Defendant's Admission of Penis Pictures (4 & 5)</u>

The Court did not err in not admitting pictures of Copp's penis into evidence at trial because Copp never submitted the evidence for admission. At the onset of this matter, as there were numerous photographs of male genitalia in conjunction with the child pornographic images involved in the case, the Government obtained a search warrant to obtain pictures of Copp's body including his penis. (4:16-MJ-00103 DDN). Following, Copp filed a motion to quash the aforementioned search warrant and prevent the Government from taking pictures of his penis and

13

the Government responded. (Doc. 23, 24). After a hearing in the matter, the parties agreed that the Government would take various pictures of Copp's body, but not pictures of Copp's penis. Almost two years later, in the middle of the bench trial in this matter, Copp requested to take pictures of his penis and introduce those images into evidence to the Court to prove that the pornographic images submitted by the Government were not images of his penis. Following, the Government objected to Copp's request on several grounds, including that there had been more than two years since the pictures at issue were taken and almost two years since Copp had refused to submit to being photographed by the Government.

Nevertheless, the Court allowed Copp to take pictures of his penis and make an offer of proof to support the Court admitting the pictures into evidence. (Doc. 192). Following, Copp's investigator/computer expert Greg Chatten took pictures of Copp's penis. However, Copp never attempted to make an offer of proof for the Court to consider admitting the images into evidence, nor did he attempt to admit the new 2018 photos of his penis into evidence through any of his witnesses. Therefore, Copp's claim is now moot as he made a strategic trial decision regarding not admitting the photographs of his penis. Thus, Copp's claim has no merit and his motion for a new trial should be denied.

      e)      <u>Denial of Defendant's Motion to Designate an Expert (6 & 7)</u>

The Court did not err in allowing Greg Chatten ("Chatten") to testify in a limited capacity regarding his analysis of the electronic evidence at issue in this case, and his designation as an expert is irrelevant as his testimony was still admitted over the objection of the Government. Here the Court was charged under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) and <u>Kumho Tire Co. v. Carmichel</u>, 526 U.S. 137 (1999) with the role of being a

14

gatekeeper for expert testimony, and in addition to making determinations pursuant to Rule 702,1 "as a gatekeeper, the Court should carefully review expert testimony under Rules 401 (relevancy)…and 403 (probative value v. prejudice)" as well. U.S. v. Rutherford, 104 F. Supp. 2d 1190, 1192 (D. Neb. 2000). Therefore, the Court did properly rule and limit the scope of Chatten's testimony as the reliability of Chatten's methods and the principles underlying his opinions were severely lacking or non-existent. "Rule 702 requires the trial judge to act as a 'gatekeeper,' admitting expert testimony only if it is both relevant and reliable. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court is granted broad discretion in its determination of reliability." United States v. Vesey, 338 F.3d 913, 917 (8th Cir. 2003), citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999). "Expert testimony should be admitted if it is based on sufficient facts, it "is the product of reliable principles and methods," and "the witness has applied the principles and methods reliably to the facts of the case." Id. See, Fed.R.Evid. 702; see also General Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).   Therefore, after assessing the relevance and reliability of Chatten's testimony, the Court ruled properly in this matter.

   Now, the Government does not agree or concede that Mr. Chatten is in any manner an expert with respect to any report, examination, or testimony given by him. The Government still contends that Mr. Chatten's conclusions as to the purported use of Remote Access on solely one computer (Government's Exhibit #1) at issue in this matter, (which appear to be based solely on hearsay) were well outside of the scope of his limited purported "expertise" in forensic computing.   In addition, Mr. Chatten's reports were deficient in documenting any procedures followed in the course of his purported examination, leaving the Court in a difficult position to

15

evaluate his methodology, if any was indeed followed. Nevertheless, the Court did allow Chatten to testify, and the ruling limiting some of Chatten's testimony was appropriate, when coupled with the insufficient facts and overwhelmingly unreliable principles and methods employed by Chatten in analyzing the electronic evidence in this case. Thus, Copp's argument is without merit and his motion for a new trial should be denied.

        f)        <u>Denial of Defendant's Request to Call Michael McDonald (8)</u>

Copp asserts that he should have been allowed to call Michael McDonald ("McDonald"), who at the time of Copp's trial was awaiting his own trial for production of child pornography charges and legal counsel represented him. The decision to limit the number of character witnesses and the amount of character evidence is within the trial court's discretion. <u>Michelson v. United States</u>, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). However, here the Court did not refuse to allow McDonald an opportunity to testify, but the Court merely pointed out that due to the last minute request by Copp to have another defendant (McDonald) brought in to testify, the chances of that happening would be low. At no point and time did Copp assert that Mr. McDonald's was a crucial witness for his defense while Copp was putting on his numerous defense witnesses, nor did he indicate that he had contacted McDonald's legal counsel to obtain permission for Mr. McDonald to testify on his behalf. Copp in essence abandoned his request for McDonald's appearance and did not approach the Court again regarding McDonald's testimony as he put on over a dozen witnesses. Therefore, Copp abandoned his request for McDonald's testimony during trial. Thus, Copp's argument is without merit and his motion for a new trial should be denied.

      g)       Denial of Admission of Hearsay from Gabi Niles (9, 10 & 11)

The Court did not err in limiting improper hearsay during Gabi Niles' ("Niles") testimony. Copp asserts that the improper hearsay that he attempted to elicit from Niles was somehow admissible. Here, Copp attempted to have Niles testify to out-of-court statements made by third parties for the truth of the matter asserted in those statements. However, Copp has never identified any type of exception to the hearsay rule that would render any of her testimony admissible. See, Fed.R.Evid. 803. Therefore, as this testimony did not fall under any exception to the hearsay rule, it was wholly inadmissible and properly excluded by the Court. As such, Copp's argument is without merit and his motion for a new trial should be denied.

      h)       Denial of Admission of Hearsay from Steven Mueller (12)

The Court did not err in limiting improper hearsay during Steven Mueller's ("Mueller") testimony. Copp asserts that the improper hearsay that he attempted to elicit from Mueller was somehow admissible. Here, Copp attempted to have Mueller testify to out-of-court statements made by third parties for the truth of the matter asserted in those statements. However, Copp has never identified any type of exception to the hearsay rule that would render any of his testimony admissible. See, Fed.R.Evid. 803. Therefore, as this testimony did not fall under any exception to the hearsay rule, it was wholly inadmissible and properly excluded by the Court. As such, Copp's argument is without merit and his motion for a new trial should be denied.

      i)       Denial of Testimony from Elvin Cook (13 & 14)

The Court did not err in limiting improper hearsay during Elvin Cook's ("Cook") testimony regarding Keaton Strong and Lorraine Bala, and then striking Cook's testimony after his attorney made a motion before the Court to do so. Here, Copp attempted to have Cook testify

to out-of-court statements made by third parties for the truth of the matter asserted in those statements.   However, Copp has never identified any type of exception to the hearsay rule that would render any of Cook's testimony admissible. See, Fed.R.Evid. 803. Additionally, the testimony Copp elicited from Cook involved Cook implicating himself in criminal activity, which was the basis for Cook's attorney's motion to have his testimony stricken from the record. Therefore, as this testimony did not fall under any exception to the hearsay rule, and it required Cook to incriminate himself, it was wholly inadmissible and properly excluded by the Court. As such, Copp's argument is without merit and his motion for a new trial should be denied.

        j)        <u>Denial of Admission of Hearsay Evidence Regarding Keaton Strong (15)</u>

The Court did not err in limiting improper hearsay during the testimony of multiple witnesses regarding Keaton Strong. Copp asserts that the improper hearsay that he attempted to elicit from various witnesses was somehow admissible. Here, while conducting his direct examination of some witnesses, Copp attempted to testify himself regarding hearsay involving Keaton Strong.   Additionally, Copp attempted to have people testify to out-of-court statements made by third parties for the truth of the matter asserted in those statements. However, Copp has never identified any type of exception to the hearsay rule that would render any of this testimony admissible. See, Fed.R.Evid. 803.   Furthermore, Copp called Keaton Strong to the stand to testify and had an opportunity to ask Strong whatever questions he wanted. Therefore, as this testimony did not fall under any exception to the hearsay rule, and Copp had an opportunity to explore different areas of questions with Keaton Strong, it was wholly inadmissible and properly excluded by the Court.   As such, Copp's argument is without merit and his motion for a new trial should be denied.

k) <u>Denial of Admission of Information Regarding Business Entities (16)</u>

The Court did not err in limiting irrelevant and improper hearsay regarding who formed various business entities over a multiple year period. Here, Copp was permitted to testify for hours regarding irrelevant business dealings with multiple churches over a period of several years without a relevant basis. Nonetheless, Copp was allowed to admit this evidence at trial through his testimony and the testimony of Eric Snyder. Therefore, this argument is without merit and his motion for a new trial should be denied.

l) <u>Denial of Time to Review Video Transcripts from Interviews (17)</u>

Copp asserts that he did not have time to review the transcripts generated from the video-recorded statements of the victims in this matter. However, Copp had multiple opportunities to view the evidence in this matter, as he was brought to the courthouse with his counsel to do so. In addition, the defense was provided with the reports detailing those interviews over 18 months prior to trial and transcripts were made of those videotaped interviews, which were provided to Copp well in advance of trial.   Even further, Copp conducted an extensive cross-examination of each victim in this matter. At one point, he even had a victim return to court the next day in order to continue to cross-examine her regarding this matter.   Therefore, Copp's argument is without merit and his motion for a new trial should be denied.

m) <u>Denial of Defendant's Motion for Judgement of Acquittal (18 & 19)</u>

The verdicts are entirely consistent with the weight of the evidence, and the denial of Copp's motion for judgment of acquittal was proper. The Government presented testimony and physical evidence demonstrating that Copp produced and attempted to produce child pornography involving the victims, he was in knowing possession of child pornography on his

computer hard drives and he enticed and coerced the victims to send him pornographic pictures via the internet during the time frame alleged in the superseding indictment as discussed on pages 4 thru 11 herein.

## CONCLUSION

WHEREFORE, in light of the foregoing, all of defendant's claims for relief are without merit and there is no basis whatsoever for a new trial or judgment of acquittal. Accordingly, the Court should deny defendant's motion for new trial or in the alternative for judgment of acquittal.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

 *s/ Jennifer A. Winfield*
JENNIFER A. WINFIELD #53350MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, MO 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2019, the attached was filed electronically with the Clerk of the Court and served by way of this Court's Electronic Notification System upon all counsel of record, and mailed to Loren Copp at the St. Charles County Adult Detention Center, 301 N. Second Street, St. Charles, MO 63301.

*s/ Jennifer A. Winfield*
JENNIFER A. WINFIELD, 53350MO
Assistant United States Attorney